## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

<table>
<tr><td>_____<br><br>BOYD J. AUSTIN<br><br>   Plaintiff,<br><br>   v.<br><br>MICHAEL ASTRUE<br>Commissioner of Social Security<br><br>   Defendant.<br>_____</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td><br><br><br><br>Civil Action No. WGC-10-3210</td></tr>
</table>

### MEMORANDUM OPINION

Plaintiff Boyd J. Austin ("Mr. Austin" or "Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401-433. The parties consented to a referral to a United States Magistrate Judge for all proceedings and final disposition. *See* ECF Nos. 3, 7-8.[1] Pending and ready for resolution are Plaintiff's Motion for Summary Judgment or, in the Alternative, Motion for Remand (ECF No. 14) and Defendant's Motion for Summary Judgment (ECF No. 26). No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons set forth below, Plaintiff's Motion for Summary Judgment or, in the Alternative, Motion for Remand will be denied and Defendant's Motion for Summary Judgment will be granted.

---

[1] The case was subsequently reassigned to the undersigned.

1.      **Background**

On October 29, 2003 Mr. Austin filed an application for DIB alleging a disability onset date of May 15, 1992 due to a head injury,[2] fibromyalgia and depression.  *See* R. at 43-45, 57-58. From the date of the alleged onset, Mr. Austin remained insured through December 31, 1997. *See* R. at 28, 29, 54, 64, 75, 79.  Mr. Austin's application was denied on March 8, 2004.  R. at 30-32.  On March 21, 2004 Mr. Austin requested reconsideration, R. at 33-34, and on September 29, 2004 his application for DIB was denied again.  R. at 35-37.  Thereafter Mr. Austin requested a hearing before an Administrative Law Judge ("ALJ").  R. at 38-40.  On April 19, 2005 an ALJ convened a hearing.  Mr. Austin was represented by counsel at the hearing.  The ALJ obtained testimony from Mr. Austin and a vocational expert ("VE").  R. at 213-45.  In the August 24, 2005 decision the ALJ found Mr. Austin was not under a disability from May 15, 1992 (alleged onset date) through December 31, 1997 (date last insured) within the meaning of the Act.  R. at 22.  Mr. Austin requested a review of the hearing decision.  R. at 10-11B.  On January 11, 2007 the Appeals Council denied Mr. Austin's request for review, R. at 6-8, thus making the ALJ's determination the Commissioner's final decision.

On March 13, 2007 Mr. Austin filed a civil action in this court.  *See Austin v. Astrue*, PWG-07-CV-647, ECF No. 1.  Subsequently, on September 18, 2008, the Commissioner moved for a remand of the case pursuant to the Social Security Act, Sentence Four of 42 U.S.C. § 405(g), with the consent of Plaintiff.   *Id.*, ECF No. 27.  Five days later the court granted the motion, remanding the case to the Commissioner for further administrative proceedings.  *Id.*, ECF No. 28.

---

[2]  Mr. Austin "sustained a work-related closed head injury on April 16, 1992 when he was hit in the head with a sledgehammer."  R. at 258.

On March 25, 2009 the Appeals Council remanded the case to the ALJ.  In the Order of

Appeals Council, the ALJ was advised and instructed as follows:

> The U.S. District Court for the District of Maryland, Baltimore
> Division (Civil Action Number 07-647) has remanded this case to
> the Commissioner of Social Security for further administrative
> proceedings in accordance with the fourth sentence of section
> 205(g) of the Social Security Act.
>
> The Appeals Council hereby vacates the final decision of the
> Commissioner of Social Security and remands this case to an
> Administrative Law Judge for further proceedings consistent with
> the order of the court.
>
> In the hearing decision dated August 24, 2005, the Administrative
> Law Judge found that the claimant can perform a significant range
> of sedentary work and is not disabled.  In so doing, the
> Administrative Law Judge considered a May 17, 1993, letter from
> Dr. Richard B. Kennan, MD, one of the claimant's treating
> physicians, who wrote that the claimant was unable to return to
> work at the time.  In his letter, Dr. Kennan wrote that he had seen
> the claimant on six occasions from March 12, 1993 to May 17,
> 1993.  However, the record contains only one office note, dated
> [May 17], 1993, from Dr. Kennan.  Therefore, the record is not
> fully developed.  Further action is necessary to attempt to obtain
> records discussing all of the claimant's visits to Dr. Kennan.
> Concerning Dr. Kennan's opinion that the claimant was disabled,
> our regulations and rulings state that if the evidence does not
> support a treating source's opinion on any issue reserved to the
> Commissioner of the Social Security Administration and the
> Administrative Law Judge cannot ascertain the basis of the opinion
> from the case record, the Administrative Law Judge must make
> every reasonable effort to recontact the source for clarification of
> the reasons for the opinion (20 CFR 404.1512 and Social Security
> Ruling 96-5p).
>
> In addition, the claimant's treating psychologist, Dr. William
> O'Donnell, wrote in June 1993 that the claimant suffered from
> post-concussive syndrome and would not be expected to work for
> 12 to 18 months.  The hearing decision correctly states that Dr.
> O'Donnell's statement is on an issue reserved to the
> Commissioner.  However, when the case record contains an
> opinion from a medical source on an issue reserved to the
> Commissioner, the adjudicator must evaluate all of the evidence in
> the case record to determine the extent to which the opinion is

3

supported by the record (Social Security Ruling 96-5p).   In evaluating the medical source opinion, the Administrative Law Judge must apply the factors in 20 CFR 404.1527(d) (Social Security Ruling 96-5p).   Further evaluation of the opinion is necessary.

The record also contains a March 5, 1993 report of a neuropsychological evaluation performed by Dr. O'Donnell.   On page 5 of the report, Dr. O'Donnell indicates that the claimant has extreme limitations in six areas of functioning.   At the April 19, 2005 hearing the vocational expert testified that a person with the limitations identified by Dr. O'Donnell could not perform substantial gainful activity.   The hearing decision briefly discusses Dr. O'Donnell's report but does not explain why the Administrative Law Judge rejected Dr. O'Donnell's opinions. Although the Administrative Law Judge is not bound by the doctor's opinions, he is required to explain why he rejected them (20 CFR 404.1527).   Further evaluation of Dr. O'Donnell's opinions is necessary.

Upon remand, the Administrative Law Judge will:

- Further develop the evidentiary record by attempting to obtain medical records from Dr. Kennan, including the five reports covering March 12, 1993 to May 17, 1993, which appear to be missing from the record [(]20 CFR 404.1512).  The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing the evidence from treating sources.

- Evaluate all medical opinion evidence pursuant to the criteria in 20 CFR 404.1527 and Social Security Rulings 96-2p, 96-5p, and 96-6p, explaining the weight given to the evidence and, if necessary, recontacting treating sources for clarification of the reasons for their opinions (20 CFR 404.1512 and Social Security Ruling 96-5p).

- Obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base ([S]ocial Security Rulings 83-14 and 85-15).  The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole.   The Administrative Law Judge will ask the vocational expert to identify examples of

> appropriate jobs and to state the incidence of such
> jobs in the national economy (20 CFR 404.1566).
> Before relying on the vocational expert evidence, the
> Administrative Law Judge will identify and resolve
> any conflicts between the occupational evidence
> provided by the vocational expert and information in
> the Dictionary of Occupational Titles (DOT) and its
> companion publication, the Selected Characteristics of
> Occupations (Social Security Ruling 00-4p).
>
> In compliance with the above, the Administrative Law Judge will
> offer the claimant the opportunity for a hearing, take any further
> action needed to complete the administrative record and issue a
> new decision.

R. at 272-73.

On July 9, 2009 the ALJ sent a letter to Mr. Austin's representative requesting the representative obtain all records of Dr. Richard B. Kennan.   The ALJ further requested the representative contact Dr. William O'Donnell to elaborate on his June 1993 opinion that Mr. Austin is disabled for 12 to 18 months.  R. at 290.  Mr. Austin's representative responded via a letter dated August 18, 2009.  Dr. Kennan is deceased and no medical information from him or his office is available.  Dr. O'Donnell has been contacted and the representative is awaiting his response.  R. at 291.  On August 18, 2009 Mr. Austin's representative sent a letter to Dr. O'Donnell requesting he elaborate on his June 1993 opinion.  R. at 292-93.  In a letter of August 20, 2009 Dr. O'Donnell responded, "I saw Mr. Austin for psychological evaluation in 1993 and in 2008, only.   I did not see him for any counseling, therapy or treatment at any time.   I specialized in psychological evaluation and do not provide any other services."  R. at 348.  In the letter of September 1, 2009 to the ALJ, Mr. Austin's representative stated in part,

> Please be advised that we received a notice from Dr. William
> O[']Donnell, that he is unable to provide additional information on
> Mr. Austin's condition. [  ]

> Since neither doctor mentioned in the Appeals Council remand is able or willing to comment on Mr. Austin's condition, we respectfully request that a remand hearing be[] scheduled with medical expert.

R. at 294.

A supplemental hearing was held on June 24, 2010 in accordance with the Appeals Council's Remand. Mr. Austin was again represented by counsel. The ALJ obtained testimony from Mr. Austin and a VE. R. at 358-79. In the July 27, 2010 decision the ALJ found Mr. Austin was not under a disability at any time from May 15, 1992 (alleged onset date) through December 31, 1997 (date last insured) as defined in the Social Security Act. R. at 268. On August 19, 2010 Mr. Austin requested a review of the hearing decision. R. at 249-51. On October 27, 2010 the Appeals Council denied Mr. Austin's request for review, R. at 246-48, thus making the ALJ's determination the Commissioner's final decision.

## 2. ALJ's Decision

In the August 24, 2005 decision, the ALJ evaluated Mr. Austin's claim for DIB using the sequential evaluation process set forth in 20 C.F.R. § 404.1520. Mr. Austin bears the burden of demonstrating his disability as to the first four steps. At step five the burden shifts to the Commissioner. If Mr. Austin's claim fails at any step of the process, the ALJ does not advance to the subsequent steps. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

The ALJ determined that Mr. Austin meets the non-disability requirements for a period of disability and disability insurance benefits through December 31, 1997. At step one the ALJ found Mr. Austin has not engaged in substantial gainful activity since May 15, 1992. R. at 17.[3] The ALJ concluded at step two that Mr. Austin has the following severe impairments: "cognitive memory deficit status post head injury, degenerative joint disease and depression."

---

[3] The decision contains a typographical error. The ALJ wrote the claimant has not engaged in substantial gainful activity since May 15, **2003**.

*Id.*  The ALJ further found at step two that although Mr. Austin identified fibromyalgia as an additional impairment, "there was no documentation of the diagnosis of fibromyalgia prior to December 31, 1997, the date the claimant's insured status expired."  R. at 18.

At step three the ALJ determined Mr. Austin did not have an impairment or combination of impairments which met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart A, Appendix 1.  Regarding Mr. Austin's degenerative disc disease, the ALJ considered Listing 1.04, *Disorders of the spine*.  "[T]he medical record and the testimony of the claimant fail to provide sufficient support for a finding that []he meets the limitations required by this listing.  Dr. Tan reported in 1998 that the claimant had a normal gait and was able to walk on his heels and that straight leg raising was normal."  R. at 18.  Regarding Mr. Austin's depression, the ALJ considered listing 12.04, *Affective Disorders*.  Because this listing is classified as a mental disorder and Mr. Austin alleges a mental impairment, in accordance with 20 C.F.R. § 404.1520a, the ALJ followed a special technique to evaluate the severity of Mr. Austin's depression.  The four broad functional areas [(1) activities of daily living, (2) social functioning, (3) concentration, persistence or pace and (4) episodes of decompensation] are known as the "paragraph B" criteria for most of the mental disorders listed in Appendix 1.  The ALJ determined, during the disability period of May 15, 1992 through December 31, 1997, Mr. Austin had *moderate* restrictions of activities of daily living; had *mild* restrictions of social functioning; had *moderate* impairment in his ability to concentrate and *no* evidence of episodes of decompensation.  R. at 19.  To meet the "paragraph B" criteria, Mr. Austin's mental impairment must cause at least two *marked* limitations or one *marked* limitation and *repeated episodes* of decompensation of extended duration.

Since the requirements of "paragraph B" under Listing 12.04 had not been established, the ALJ considered the "paragraph C" criteria. The ALJ determined the "paragraph C" criteria had not been satisfied. "There are no extended episodes of decompensation and the claimant is not expected to decompensate with an increase in mental demands. Moreover, he does not need to live in a highly structured living arrangement." R. at 19.

Next the ALJ determined Mr. Austin's residual functional capacity ("RFC"). The ALJ found Mr. Austin can perform a significant range of sedentary work but he "is limited to low stress jobs that do not require great concentration or memory. He must avoid excessive climbing, balancing, stooping, heights and moving machinery." *Id.* At step four the AJL found, through the date last insured, Mr. Austin was unable to perform his past relevant work as a construction laborer (heavy exertional semi-skilled work) or as a construction superintendent (medium exertional skilled work). R. at 21.

Finally, at step five, the ALJ considered Mr. Austin's age on the alleged disability onset date (38 years old, defined as a younger individual age 18-44), education (high school), past work experience (transferability of job skills is not material) and his RFC (sedentary work with limitations). The ALJ found the Social Security Administration met its burden of proving Mr. Austin was capable of performing other work[4] that existed in significant numbers in the national economy through December 31, 1997, the date last insured, relying on the testimony of the VE. R. at 22, 238-39. Accordingly, the ALJ concluded Mr. Austin was not disabled within the meaning of the Act from May 15, 1992, the alleged disability onset date, through December 31, 1997, the date last insured. R. at 22.

After the supplemental hearing on June 24, 2010, the ALJ re-evaluated Mr. Austin's claim using the sequential evaluation process set forth in 20 C.F.R. § 404.1520. The ALJ found

---

[4] Finish machine operator, file clerk and inspector. R. at 22, 238-39.

Mr. Austin last met the insured status requirements on December 31, 1997.  R. at 257.  At step

one the ALJ determined Mr. Austin had not engaged in substantial gainful activity between May

15, 1992 (alleged disability onset date) through December 31, 1997 (date last insured).  *Id.*  At

step two the ALJ found, through the date last insured, Mr. Austin had the following severe

impairments: "status post head trauma with mild cognitive dysfunction, degenerative disc

disease, and depression."  *Id.*   The ALJ further determined at step two that Mr. Austin's chronic

low back pain was non-severe.   "[T]here is no evidence that the claimant's chronic low back pain

was due to a medically determinable impairment prior to the date last insured.  Therefore, this

condition was not severe within the meaning of the Social Security Act."  R. at 259.

Additionally at step two the ALJ considered Mr. Austin's height (5'7") and weight (ranging from

200 to 236 pounds) between the alleged onset date and the date last insured.  The ALJ noted Mr.

Austin's body mass index or BMI ranged from 31.3 to 38.1, consistent with obesity.  "However,

there is no indication that the claimant's obesity was a severe impairment with the meaning of

the Social Security [A]ct on or before the date last insured.  Nevertheless, SSR 02-1p recognizes

that the effects of obesity must be considered when evaluating disability claims, since the effects

of obesity in combination with other impairments can be greater than the effects of each

impairment considered separately.  Thus, any additional and cumulative effects of the claimant's

obesity have been considered in assessing the claimant's impairments under each step of the

sequential evaluation process."  R. at 260.

At step three the ALJ found Mr. Austin did not have an impairment or combination of

impairments which met or medically equaled one of the listed impairments described in 20

C.F.R. Part 404, Subpart A, Appendix 1.  Regarding Mr. Austin's status post head trauma with

mild cognitive dysfunction and depression, the ALJ considered Listings 12.02, *Organic Mental*

*Disorders* (defined as psychological or behavioral abnormalities associated with a dysfunction of the brain) and 12.04, *Affective Disorders*.   Because these listings are classified as a mental disorder and Mr. Austin alleges having two mental impairments, in accordance with 20 C.F.R. § 404.1520a, the ALJ followed a special technique to evaluate the severity of Mr. Austin's status post head trauma with mild cognitive dysfunction and depression.   The four broad functional areas [(1) activities of daily living, (2) social functioning, (3) concentration, persistence or pace and (4) episodes of decompensation] are known as the "paragraph B" criteria for most of the mental disorders listed in Appendix 1, including Listings 12.02 and 12.04.   The ALJ determined, during the disability period of May 15, 1992 through December 31, 1997, Mr. Austin had *mild* restrictions of activities of daily living; had *mild* restrictions of social functioning; had *moderate* difficulties with regard to concentration, persistence or pace and *no* evidence of episodes of decompensation.   R. at 260-61.   The ALJ cited to evidence in the record which supported these ratings.   To meet the "paragraph B" criteria, Mr. Austin's mental impairments must cause at least two *marked* limitations or one *marked* limitation and *repeated episodes* of decompensation of extended duration.

Since the requirements of "paragraph B" under Listings 12.02 and 12.04 had not been established, the ALJ considered the "paragraph C" criteria.   The ALJ found a lack of evidence establishing the presence of the "paragraph C" criteria.   "During the relevant time period, there is no indication of a residual disease process that resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would have been predicted to cause the claimant to decompensate.   There is also no indication of an inability to function outside a highly supportive living arrangement."   R. at 261.   The ALJ further cited the opinion of Dr. Raclaw, a medical expert, who determined Mr. Austin did not have an impairment or a

combination of impairments which met or equaled a listing by December 31, 2007, the date last insured.  *Id*.

Next the ALJ determined Mr. Austin's RFC.

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with sitting 30 to 40 minutes and standing five minutes, lifting 10 pounds occasionally and lesser amounts frequently, consistently, on an alternate basis throughout an eight-hour workday, and had to avoid heights and hazardous machinery, temperature and humidity extremes, stair climbing, ropes, ladders and like substances.  In addition, the claimant was limited to simple, routine unskilled jobs with an SVP of 2.

R. at 261-62.

At step four the ALJ determined Mr. Austin was unable to perform his past relevant work as a construction engineer which was skilled work with light exertional demands.  R. at 267.  Finally, at step five the ALJ considered Mr. Austin's age (43 years on the date last insured; a younger individual), his education (at least high school and able to communicate in English), past work experience (transferability of job skills is not material) and his RFC (sedentary work with limitations).  The ALJ found the Social Security Administration met its burden of proving Mr. Austin was capable of performing other work[5] that existed in significant numbers in the national economy through December 31, 1997, the date last insured, relying on the testimony of the VE.  R. at 268, 375-76.  Accordingly, the ALJ concluded Mr. Austin was not disabled within the meaning of the Act from May 15, 1992, the alleged disability onset date, through December 31, 1997, the date last insured.  R. at 268.

**3.      Standard of Review**

The role of this Court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards.  42

---

[5]  Document preparer, addressor and order clerk.  R. at 268, 375-76.

U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d at 1202; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th

Cir. 1990).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It is more than a scintilla, but less

than a preponderance, of the evidence presented, *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir.

1984) (citations omitted), and it must be sufficient to justify a refusal to direct a verdict if the

case were before a jury.  *Hays*, 907 F.2d at 1456.  This Court cannot try the case *de novo* or

resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence.

*Id.*

**4.    Discussion.**

Plaintiff does not challenge the ALJ's RFC determination with regard to Mr. Austin's

physical limitations.  *See* ECF No. 14-1 at 6 n.2.  Plaintiff however contends the ALJ's RFC

finding concerning Mr. Austin's mental limitations is unsupported by the evidence of record.

Plaintiff alleges the ALJ failed to accord proper weight to the opinions of four medical

sources:  Dr. O'Donnell, Dr. Kennan, Dr. Anderson and Dr. Raclaw.  The ALJ's assessment of

each medical source's opinion is discussed below.

    *A.      Dr. O'Donnell*

The ALJ did not accord any persuasive weigh to Dr. O'Donnell's opinion.  Dr.

O'Donnell, who conducted a neuropsychological evaluation of Mr. Austin on March 5, 1993,

opined Mr. Austin suffers from post-concussive syndrome, and based on test results, Mr. Austin

was not only unable to perform his job but also unable to perform any work at the present time.

Dr. O'Donnell further opined Mr. Austin could not return to any type of work for a period of 12

to 18 months.  The ALJ rejected Dr. O'Donnell's opinion "as he is a nontreating physician who

based his opinion on a one-time examination performed before the claimant began taking antidepressants or receiving individual psychotherapy." R. at 265. The ALJ further discounted Dr. O'Donnell's opinion as unsupported by the subsequent records of Dr. Reeves, a treating psychiatrist, and conflicting with Dr. O'Donnell's own detailed neuropsychological examination findings, particularly the finding of a mild cognitive disorder. *Id.*

Plaintiff argues the ALJ failed to evaluate Dr. O'Donnell's opinion in accordance with 20 C.F.R. § 404.1527, that the ALJ failed to recognize the difference between the cognitive limitations and testing evaluated by Dr. O'Donnell versus the psychiatric treatment by Dr. Reeves, and that the ALJ overlooked the fact that Dr. O'Donnell's opinion is consistent with the opinions of all other medical sources. ECF No. 14-1 at 8-9.

An ALJ is required to evaluate every medical opinion received. If a medical source is not a treating source whose opinion is given controlling weight, an ALJ must consider several factors in deciding the weight to assign to a medical opinion. 20 C.F.R. § 404.1527(d) (2010). Those factors are "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005).

In assigning no persuasive weight to Dr. O'Donnell's opinion, the ALJ noted that Dr. O'Donnell is a nontreating physician, thus addressing factors 1 and 2. The ALJ considered whether Dr. O'Donnell's opinion was supported by the record (factor 3) and whether Dr. O'Donnell's opinion was consistent with the record (factor 4). Although the ALJ did not specifically reference Dr. O'Donnell's specialization (factor 5), the ALJ noted that William O'Donnell is a Ph.D., R. at 258, and wrote on several occasions that Dr. O'Donnell conducted a

neuropsychological evaluation of Mr. Austin, or evaluated or tested Mr. Austin.  *See* R. at 258, 260, 261, 263-64, 265.   In the decision the ALJ frequently cites to the March 5, 1993 neuropsychological evaluation (R. at 156-61) conducted by Dr. O'Donnell.   The letterhead of this medical record, as well as Dr. O'Donnell's signature block, clearly identifies his specialty: Licensed Psychologist.  R. at 156, 161.  The Court finds the ALJ did consider the five factors for evaluating Dr. O'Donnell's opinion evidence in accordance with 20 C.F.R. § 404.1527(d) and *Johnson*.

Second, Plaintiff contends the ALJ equated as comparable the cognitive limitations and testing evaluated by Dr. O'Donnell with the psychiatric treatment by Dr. Reeves.  A review of the record reveals Dr. O'Donnell conducted a variety of tests when he evaluated Mr. Austin on March 5, 1993.  The purpose of the tests was "to clarify the nature and extent of existing cognitive deficits."  R. at 157.  Testing revealed symptoms consistent with a history of mild head injury such as a lower performance on "tests of attention and concentration and on measures of psychomotor speed."  R. at 158.  In addition to the cognitive function of Mr. Austin's brain, Dr. O'Donnell also conducted personality and projective tests for signs of psychotic thought process.  One test, measuring psychological distress, yielded results with high scores on the Anxiety and Depression Subscale.  Dr. O'Donnell opined,

> [These] symptoms[6] are consistent with the impression of Post Concussive Syndrome with depression, anxiety and reduced capacity to tolerate stress.  On the Neuropsychological Impairment Scale . . . the resulting profile is consistent with the impression of Post Concussive Syndrome with the patient reporting a number of

---

[6]  Trouble remembering things – Extremely.
   Crying easily – Extremely.
   Temper outbursts – Extremely.
   Worrying too much – Extremely.
   Feeling tense and keyed up – Extremely.
   Feeling restless – Extremely.

R. at 160.

> cognitive as well as affective symptoms. Mr. Austin does report some deterioration of his cognitive abilities. This may well reflect increased awareness of his deficits, but it also probably reflects the chronicity of his illness, increasing frustration and symptoms of depression.

R. at 160.

Dr. O'Donnell recommended, among other things, that Mr. Austin receive individual psychotherapy to address his affective disturbance symptoms. R. at 161. Talmadge G. Reeves, M.D. is a psychiatrist. He treated Mr. Austin for depression, originally prescribing Despiramine 25 mg, 1 or 2 at bedtime. R. at 146. Dr. Reeves subsequently prescribed Thorazine. This medication better regulated Mr. Austin's post-traumatic stress type situation. Mr. Austin described the medicine as "a magic bullet." Dr. Reeves wrote in a letter of August 5, 1996 that Mr. Austin "is taking [Thorazine], not showing any side effects, it is settling him down very nicely, he's gone through a couple of crises without major repercussions. . . ." R. at 149. The medication prescribed by Dr. Reeves treated Mr. Austin's affective disturbance symptoms that Dr. O'Donnell rated as "extremely."

Third, Plaintiff argues the ALJ overlooked the fact that Dr. O'Donnell's opinion is consistent with all other medical sources. Dr. O'Donnell's opinion that Mr. Austin suffers from a history of mild concussive head injury with symptoms of post concussive syndrome is consistent with other sources. *See, e.g.,* R. at 163 (speech/language evaluation revealed a mild cognitive communication deficit, particularly with regard to short-term memory), R. at 169 (a post-concussion syndrome with memory problems). As the ALJ noted however, what was inconsistent was Dr. O'Donnell's opinion (expressed in a June 9, 1993 letter to Mr. Austin's attorney) that Mr. Austin "is unable to perform not only his past employment, but also *any work* at this time. I do not expect him to be able to return to *any form of work* for 12-18 months." R.

at 167 (emphasis added).  Although Dr. O'Donnell identified the basis of this opinion from testing conducted on March 5, 1993, Dr. O'Donnell's test results do not indicate such a severe limitation.  Dr. O'Donnell summarized his neuropsychological evaluation.

> These test findings . . . are consistent with the history of Concussive Head Injury with symptoms of Post Concussive Syndrome.  Test findings reveal relatively preserved intellectual functioning with subtest patterns suggesting bright to superior pre-morbid intelligence, with relative deficits and decline observed on tests of attention and concentration and on measures of psychomotor speed.  Memory testing results further reveal decline of memory and learning capacity in both verbal and visual modality with verbal memory being somewhat more impaired relative to visual.  In particular, it is noted that new learning of complex verbal material is at the low end of average.  A normal, incremental learning curve was observed, however, with fairly good ability to retain learned information over time.  Results of the Neuropsychological Test Battery also are encouraging, in that the Summary Measures are within normal limits and the four best general indicators of cognitive functioning also are normal. Deficient performance was observed on tests of sustained concentration, with mild deficits on tests of upper extremity motor speed.  Today's findings suggest preserved construction and praxic skills, with intact sensory functioning in both auditory and visual modalities.  It also should be noted that the patient did evidence mild deficit on executive organizational tasks, with impaired performance on a test of auditory processing accuracy.  These findings are accompanied by symptoms of Post Concussive Syndrome, including depression, anxiety and reduced capacity to tolerate stress.

R. at 160-61.  Substantial evidence supports the ALJ assigning no persuasive weight to Dr. O'Donnell's June 9, 1993 opinion.

   B.    *Dr. Kennan*

   Richard B. Kennan, Jr., M.D. saw Mr. Austin on six occasions between March 12, 1993 and May 17, 1993 to treat Mr. Austin's depression surrounding a post-concussive syndrome.  R. at 169.  Dr. Kennan opined, "[b]ecause of the difficulties associated with his poor memory, Mr. Austin is unable to return to work at this time."  *Id.*

16

The ALJ assessed Dr. Kennan's opinion as follows:

> Dr. Kennan's opinion is accepted to the extent that it is not inconsistent with the residual functional capacity as determined. Of note, Dr. Kennan expressed his opinion that the claimant was unable to return to work, which is consistent with the decision herein that the claimant was unable to perform his past relevant work.   However, there is no indication from Dr. Kennan's statement that the claimant was precluded from performing any other type of work.

R. at 265.

Plaintiff argues the opinion of Dr. Kennan, a treating physician, should have been accorded controlling weight per 20 C.F.R. § 404.1527(d)(2).  Plaintiff claims it is impossible to determine the weight the ALJ assigned.  Further, Plaintiff contends the ALJ attempts to avoid the treating source doctrine through manipulation and misinterpretation.  "Dr. Kennan did not state that Austin was unable to perform his past relevant work.  Instead, Dr. Kennan stated that Austin was unable to work.  The ALJ is manipulating the term 'work' in an effort to avoid having to do that which he is unable to do, namely, offer evidence which contradicts Dr. Kennan's opinion." ECF No. 14-1 at 8.

As the Commissioner notes in his motion for summary judgment, Dr. Kennan did not state that Mr. Austin is unable to work.  Dr. Kennan instead stated that Mr. Austin is unable to *return* to work at this time.  "Dr. Kennan's statement appears to have been carefully worded, because had his intention been that Mr. Austin was incapable of performing any work, it would have been very easy to say so.  This is further supported by the fact that Dr. Kennan based his opinion on difficulties associated with Mr. Austin's poor memory, which would not necessarily preclude the performance of any and all jobs." ECF No. 26-1 at 14 (citation omitted).  The Court concurs.  If Dr. Kennan intended to opine that Mr. Austin could not work at all, Dr. Kennan could have explicitly stated so, similar to Dr. O'Donnell's declaration that Mr. Austin "is unable

to perform not only his past employment, but also any work at this time."  R. at 167.  Dr. Kennan's opinion is much narrower, addressing Mr. Austin's ability to *return* to his then current position as a construction engineer.

Finally, Plaintiff claims the ALJ failed to comply with the treating source doctrine.  "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."  20 C.F.R. § 404.1527(d).  Plaintiff fails to acknowledge a critical fact:  limited medical records from Dr. Kennan.  In fact, the administrative record contains <u>one</u> medical record from Dr. Kennan, a letter dated May 17, 1993.  In this letter Dr. Kennan states he has treated Mr. Austin on six occasions, that Mr. Austin is taking Paxil, an anti-depressant, in the a.m. and that Mr. Austin is receiving psychotherapy.  R. at 169.  The medical records from Mr. Austin's five previous visits with Dr. Kennan are unavailable.  Mr. Austin's representative attempted to obtain those other records but learned Dr. Kennan is deceased and no medical information is available from his office.  R. at 291.  In the decision the ALJ acknowledged efforts to obtain those records.  "The undersigned finds that every reasonable effort has been made to obtain the records of Dr. Kennan . . . pertaining to [his] evaluation and/or treatment of the claimant during the relevant time period."  R. at 263.

Although there are references to Dr. Kennan in the records of Dr. Reeves, *see* R. at 144,[7] and Dr. O'Donnell, *see* R. at 161,[8] these references do not constitute medically acceptable clinical and laboratory diagnostic techniques.  Dr. Kennan treated Mr. Austin on six occasions.

---

[7]  From September 22, 1995 Office Visit: "Went to Dr. Kennan at one time."

[8]  "Dr. Richard Kennan of Salisbury who is familiar with the patient would be an excellent choice for individual psychotherapy."

The medical records reflecting the bases for Dr. Kennan's longitudinal picture of Mr. Austin's impairment are unavailable. The ALJ had <u>one</u> office visit, the sixth, to assign weight to Dr. Kennan's opinion without the progressive notes which may have supported that opinion. The burden of producing these medical records rests on the claimant.[9] *See* 20 C.F.R. § 404.1512(a) (2010). The ALJ accepted Dr. Kennan's opinion to the extent it is not inconsistent with Mr. Austin's RFC as determined by the ALJ. Dr. Kennan's opinion addressed Mr. Austin's ability to *return* to work as a construction engineer. Substantial evidence supports the ALJ's determination.

C.      *Dr. Anderson*

Plaintiff asserts the ALJ summarily assigned no weight to Dr. Anderson's opinion. Plaintiff contends the ALJ's assessment fails to comport with 20 C.F.R. § 404.1527(d) and *Johnson*. Additionally, according to Plaintiff, the ALJ failed to articulate how Dr. Anderson's examination findings are contrary to her opinion. Further, the ALJ allegedly did not explain how he knows Dr. Anderson's opinion is based on Mr. Austin's subjective allegations.

The Court disagrees. Contrary to Plaintiff's contention, the ALJ provides a *detailed* analysis regarding his assessment of Dr. Anderson's opinion. For instance, the ALJ noted that Dr. Anderson indicated,

> [T]he claimant had moderate limitations in understanding and remembering simple instructions, interacting appropriately with the public, supervisors, and coworkers, and responding appropriately to usual work situations and changes in a routine work setting, and marked limitations in making judgments on simple work-related decisions, as well as understanding, remembering, and carrying out complex instructions. Dr. Anderson indicated that her assessment was supported by reasoning and memory test results. However, a review of Dr.

---

[9]  In light of the fact that Mr. Austin's representative was unable to obtain records or further comments from Dr. Kennan and Dr. O'Donnell, "[i]n accordance with the claimant's representative's request, medical expert interrogatories were propounded upon Dr. Raclaw." R. at 263.

> Anderson's consultative examination findings shows that working
> memory testing was in the average range.  Dr. Anderson had noted
> that the claimant was able to comprehend directions.  She further
> observed that the claimant was able to give a good, sequential
> history concerning his educational, medical and vocational
> background.  All test scores were in the low average to superior
> range.  According to Dr. Anderson, the claimant was able to solve
> mental arithmetic problems at an above average rate and was
> efficient on graphical motor tasks.

R. at 265.  In the decision the ALJ also explained why he found a portion of Dr. Anderson's

opinion was based on Mr. Austin's subjective complaint.

> Although Dr. Anderson reported in her summary that adaptation
> depends upon much assistance from the claimant's wife, that the
> claimant's ability to understand and recall directions is markedly
> impaired, and that the claimant would have difficulty responding to
> supervision, teamwork and any changes in work routine, there is
> no support for this conclusion in Dr. Anderson's consultative
> examination findings and, therefore, *appears to be based solely on
> the claimant's subjective allegations*.  The claimant had reported to
> Dr. Anderson that he needed assistance with dressing due to pain
> and lack of coordination in the upper extremities.  However, there
> is no basis for the claimant's symptoms or limitations in the record
> during the relevant period in question.

R. at 266 (emphasis added).  The ALJ did not accord any persuasive weight to Dr. Anderson's

opinion because the ALJ determined "Dr. Anderson's medical opinion is not supported by her

consultative examination findings as detailed above nor by the mild clinical findings reported by

Dr. O'Donnell and the claimant's speech therapist/pathologist during the relevant period [May

15, 1992 to December 31, 1997] in question[.]"  *Id.*  In his detailed assessment of Dr. Anderson's

opinion, the ALJ considered factors 1 through 4 under 20 C.F.R. § 404.1527(d) and *Johnson*.

The ALJ acknowledged Dr. Anderson's specialization (psychology), the fifth factor, earlier in

the decision, *see* R. at 259.  Substantial evidence supports the ALJ's determination.

20

D.      *Dr. Raclaw*

Lastly, Plaintiff argues the ALJ failed to accord appropriate weight to the opinion of Hillel Raclaw, a psychologist, who was selected by the Social Security Administration to review Mr. Austin's medical records and answer medical interrogatories.   The ALJ assessed Dr. Raclaw's opinion as follows:

> According to Dr. Raclaw, the claimant has difficulty maintaining emotional stability and his ability to learn new material is severely compromised.  Dr. Raclaw indicated that evidence of emotional instability was noted by the claimant's treating physician's notes and that his ability to adjust to occupational activity is severely compromised.  However, Dr. Raclaw noted that the claimant's IQ scores and memory functioning had worsened between neuropsychological testing performed July 15, 1992[10] and the mental consultative examination of June 4, 2009.[11]   After reviewing the pertinent medical evidence, including treatment notes prior to the date last insured, Dr. Raclaw recommended an onset date of April 21, 2004, which coincides with a medical note indicating that the claimant was experiencing paranoia.   The undersigned does not give Dr. Raclaw's opinion any significant weight based on this single medical note.  A review of the treatment record on which Dr. Raclaw's opinion appears to be based indicates that the claimant called his primary care physician on April 21, 2004 reporting that he was paranoid and inquired as to whether this was a side effect of his medications.  Although he was referred to a psychiatrist, the claimant refused to follow through on his recommendation.  The following day, the claimant called to report that he had stopped taking Lexapro and was feeling better. Relevant medical evidence during the period on or before the date last insured shows no evidence of paranoia or other thought disorder.  Specifically Dr. O'Donnell mentioned in March 1993 that there was no history or evidence of hallucinations or delusional thinking.  Moreover, the claimant's speech/language

---

[10]   For the record, on the second page of Form HA-1152-U3, *Medical Source Statement of Ability to Do Work-Related Activities (Mental)*, Dr. Raclaw wrote, "IQ scores and memory functions worsened between neuropsychological testing on 7/15/92 and mental C.E. of 6/4/09."  R. at 350.  No neuropsychological testing occurred on July 15, 1992.  On that date the speech/language evaluation was conducted.  *See* R. at 162-64.  The neuropsychological testing or evaluation by Dr. O'Donnell was performed on March 5, 1993.  *See* R. at 156-61.  Dr. Raclaw correctly identified March 5, 1993 as the date of the neuropsychological testing on Form HA-L70, *Medical Interrogatory – Mental Impairment(s)—Adult*.  *See* R. at 352.

[11]   Conducted by Dr. Anderson.

pathologist reported that the claimant's orientation was within normal limits.

R. at 266 (citations omitted).

The ALJ explained in detail why he accorded no significant weight to Dr. Raclaw's opinion.  The Court finds substantial evidence supports the ALJ's determination.

**5.**     **Conclusion**.

Substantial evidence supports the decision that Mr. Austin was not disabled within the meaning of the Act from May 15, 1992, the alleged disability onset date, through December 31, 1997, the date last insured.  Accordingly, the Defendant's Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment or, in the Alternative, Motion for Remand will be denied.

Date: <u>February 28, 2013</u>                              _____/s/_____
                                                          WILLIAM CONNELLY
                                                          UNITED STATES MAGISTRATE JUDGE